## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WAYNE ROGERS, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:18-CV-1961(JCH) |
| | : | |
| v. | : | |
| | : | |
| JON ALDI, et al., | : | |
| Defendants. | : | MARCH 12, 2019 |
| | : | |

## INITIAL REVIEW ORDER

**I.   INTRODUCTION**

The plaintiff, Wayne Rogers ("Rogers"), who is incarcerated at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, has filed a Second Amended Complaint (Doc. No. 13) pro se under section 1983 of title 42 of the United States Code. Rogers sought leave to proceed in forma pauperis.  (Doc. Nos. 2, 8).  On January 4, 2019, the court granted Johnson's application.  (Doc. No. 9).

The Second Amended Complaint names ten defendants: Counselor Supervisor Jon Aldi, Lieutenant J. Kelly, Warden Stephen Faucher, Deputy Warden Carlos, Deputy Warden Cotta, Counselor Supervisor Stanley, Warden Mulligan, Deputy Warden Roach, Captain Orgando, and Captain Danek.  Defendants Kelly, Faucher, Carlos, and Cotta work at Corrigan-Radgowski Correctional Center ("Corrigan"), and defendants Stanley, Mulligan, Roach, Orgando, and Danek work in the Walker building at MacDougall-Walker Correctional Institution ("Walker").   Rogers contends that the defendants were deliberately indifferent to his safety.  Rogers seeks damages and injunctive relief.

Under section 1915A of title 28 of the United States Code, the court must review

prisoner civil complaints and dismiss any portion of a complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.  In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[ ]."  Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).  However, notwithstanding this liberal interpretation, a pro se complaint will not survive dismissal unless the factual allegations meet the plausibility standard.  See, e.g., Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 387 (2d Cir. 2015).

**II.   ALLEGATIONS**

On October 5, 2018, Rogers was detained at Hartford Correctional Center and informed that he would be transferred to Corrigan for placement in Phase 3 of the Security Risk Group ("SRG") Program.  Second Am. Compl. (Doc. No. 13) at 4 ¶ 1.  On

October 9, 2018, Rogers was transferred to the SRG Unit at Corrigan. Id. at 4 ¶ 2.

The following day, inmates in the SRG Unit told Rogers that he could not stay there because he was not a gang member. Id. at 4 ¶ 3. On October 12, 2018, Rogers submitted an inmate request to defendant Kelly about this issue. Id. at 4 ¶ 4. Shortly thereafter, an inmate told Rogers that he would be stabbed if he remained in the SRG Unit. Rogers reported the threat to defendant Kelly. Id. at 4 ¶ 5.

On October 18, 2018, Rogers was removed from the SRG, pending protective custody review 3 placement. Id. at 4 ¶ 6. On October 22, 2018, defendant Kelly interviewed Rogers to initiate the protective custody package. He told Rogers that he was aware of the situation in the SRG Unit and warned Rogers that, if Rogers continued to grieve a separate issue, protective custody placement would be denied. Id. at 4 ¶ 7.

Defendant Kelly knew which inmate had threatened Rogers. Nevertheless, he had that inmate brought to the restrictive housing unit ("RHU") and confined him three cells away from Rogers. Id. at 5 ¶ 8  In addition, defendant Kelly told the inmate that Rogers had snitched on him and was pending protective custody placement. Id. As a result, Rogers was subjected to constant ridicule and taunting. Other inmates constantly banged on the connecting bunk to keep Rogers awake. Id. at 5 ¶ 9. These actions continued over the next week. Id. at 5 ¶ 10.

On October 23, 2018, Rogers spoke with defendant Faucher about another issue. Defendant Faucher told Rogers that protective custody placement would be denied if he did not drop the other issue. Id. at 5 ¶ 11. On October 30, 2018, while he was speaking to defendants Carlos and Cotta, defendant Faucher interrupted Rogers

3

and said that the conversation better not be about the other issue. Id. at 5 ¶ 12.

On November 5, 2018, defendant Kelly told Rogers that his protective custody package would be forwarded to defendant Aldi and Deputy Wardens Cotta and Carlos for approval. Defendant Kelly said that he had recommended placement in protective custody. Id. at 5 ¶ 12.

On November 2, 2018, Rogers had filed a federal lawsuit against correctional officials at Corrigan regarding the other issue. Id. at 5 ¶ 14. On November 5, 2018, Rogers received the docket number and on November 7, 2018, he received a notice of electronic filing. The notice was delivered by an officer that works in the same office as defendants Cotta and Carlos. Id. at 6 ¶ 15.

On November 13, 2018, Rogers spoke with defendants Cotta and Carlos. He stated that he had been in RHU for thirty days and inquired about his protective custody placement. Defendant Cotta said that he was going to put Rogers back in the SRG Unit and let the inmates assault him because Rogers did not listen. Id. at 6 ¶ 16.

Rogers deliberately committed a disciplinary infraction to get transferred to a different facility where he could be housed apart from gang members. Id. at 6 ¶ 17. Rogers was transferred to Walker on November 15, 2018. Id. at 6 ¶ 18. The same day, Rogers submitted requests to defendants Danek, Stanley, Roach, and Mulligan. He has not received any responses. Id. at 6 ¶ 19. On November 19, 2018, Rogers submitted another request regarding his safety because he had been assigned to recreation with active gang members who had threatened Rogers as soon as he arrived at Walker. Id. at 6 ¶ 20.

Between November 16, 2018 and the day he submitted his Second Amended Complaint, Rogers has been subjected to extortion, beatings, and constant torment. Id. at 7 ¶ 21. Whenever Rogers speaks to defendant Stanley about his safety, defendant Stanley tells Rogers that he should not be a gang member and then tells the other inmates that Rogers is a snitch. Id. at 7 ¶ 23.

### III. **ANALYSIS**

Rogers asserts claims for deliberate indifference to safety and supervisory liability. In addition, the allegations plausibly set forth a claim for retaliation.

#### A. Deliberate Indifference to Safety

Rogers was a pretrial detainee at all times relevant to this action. He contends that the defendants were deliberately indifferent to his safety in violation of his rights under the Fourteenth Amendment. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (rights of pretrial detainees are considered under the Fourteenth Amendment while rights of sentenced prisoners are considered under the Eighth Amendment).

In Kingsley v. Hendrickson, ___ U.S. ___, 135 S. Ct. 2466, 2473 (2015), the Supreme Court held that a pretrial detainee asserting a claim for excessive use of force need only meet an objective standard. In Darnell, the Second Circuit held that the reasoning from Kingsley should be applied to other inmate claims involving deliberate indifference, including claims for deliberate indifference to safety. 849 F.3d at 33 n.9. The court held that a "pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the

5

defendant-official knew, or should have known, that the condition imposed an excessive risk to health or safety." Id. at 35.

Rogers alleges that he specifically informed defendants Kelly, Faucher, Carlos, Cotta, Stanley, Mulligan, Roach, and Danek about his concerns for his safety and the threats against him. As they were aware of the threats and did nothing to address them, the deliberate indifference to safety claims will proceed against these eight defendants.

Rogers alleges only that defendant Kelly told him that the protective custody package would be forwarded to defendant Aldi. Rogers does not allege that this actually happened. Nor does he allege that he informed defendant Aldi of his issues with the SRG inmates or his request for protective custody. In addition, although Rogers includes Captain Orgando as a defendant, he does not reference him in the statement of facts. Thus, Rogers has alleged no facts to support a plausible claim against defendant Aldi or defendant Orgando. The failure to protect claim is dismissed as to defendants Aldi and Orgando pursuant to 28 U.S.C. § 1915A(b)(1).

B.  Supervisory Liability

All the defendants are alleged to be supervisory officials. To prevail on a claim for supervisory liability under section 1983, the plaintiff must provide evidence that the defendants were personally involved in the alleged constitutional violations. See Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013). Prior to the Supreme Court's decision in Iqbal, the Second Circuit held that personal involvement could be shown by demonstrating that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). In Iqbal, the Supreme Court emphasized that "supervisor liability" is a misnomer and should not be confused with respondeat superior. Iqbal, 556 U.S. at 676-77. The Supreme Court required that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. at 676. The Court noted, however, that the required showing will vary depending on the constitutional question at issue. Id. at 676.

In Iqbal, the constitutional issue involved invidious discrimination. The Court found that the plaintiff was required to "plead and prove that the defendant acted with discriminatory purpose," id. at 676, and, therefore, that allegations that the supervisor knew "of his subordinate's discriminatory purpose" were insufficient. Id. at 677.

The Second Circuit has not affirmatively decided whether Iqbal abrogates some or all of the Colon factors with respect to supervisory liability. See Turkmen v. Hasty, 789 F.3d 218, 250 (2d Cir. 2015) (Colon factors may demonstrate personal involvement, provided "th[e] standard—be it deliberate indifference, punitive intent, or discriminatory intent—reflects the elements of the underlying constitutional tort"), reversed in part on other grounds sub. nom., Ziglar v. Abbas, 137 S. Ct. 1843 (2017);

7

Raspardo v. Carlone, 770 F.3d 97, 117 (2d Cir. 2014) ("We have not yet determined the contours of the supervisory liability test, including the gross negligence prong, after [Iqbal.]"); Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations").

Until the Second Circuit affirmatively decides the issue, this court will assume that all five Colon factors may be used to establish supervisory liability, at least for claims requiring a showing of deliberate indifference. Other district courts within the Second Circuit share this view. See, e.g., Matteo v. Perez, No. 16-CV-1837(NSR), 2017 WL 4217142, at *4 (S.D.N.Y. Sept. 19, 2017) (assuming all five Colon factors apply where claim does not require showing of discriminatory intent); Stamile v. County of Nassau, No. 10-CV-2632 (AKT), 2014 WL 1236885, at *4 (E.D.N.Y. Mar. 25, 2014) (applying Colon in absence of clear direction from Second Circuit).

Rogers alleges that he specifically informed defendants Kelly, Faucher, Cotta, Carlos, Stanley, Mulligan, Roach, and Danek of his complaints. This allegation is sufficient to state a claim for supervisory liability under the second and fifth Colon factors. Thus, these eight defendants also could be found liable under a theory of supervisory liability. Rogers does not allege that he informed defendants Aldi and Orgando of his complaints or that they learned of them in any other way. Thus, there is no basis for a supervisory liability claim against defendants Aldi and Orgando.

### C. Retaliation

Finally, a review of the allegations indicates that Rogers also states a plausible retaliation claim against defendants Kelly, Faucher and Cotta. To state a section 1983 retaliation claim, Rogers must demonstrate "(1) protected speech or conduct, (2) adverse action by defendant, and (3) a causal connection between the protected speech and the adverse action." Bilal v. White, 494 F. App'x 143, 146 (2d Cir. 2012) (summary order) (citing Espinal v. Goord, 558 F.3d 119, 128 (2d Cir.2009)). Because retaliation claims are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific factual allegations. Conclusory allegations of retaliatory conduct are not sufficient. See Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015) ("First Amendment retaliation claims brought by prisoners must 'be supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'") (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).

Making complaints and filing grievances is protected activity. See Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (filing a grievance is constitutionally protected activity and will support a retaliation claim). Rogers alleges that (1) defendant Kelly told him that protective custody would be denied unless he dropped his grievance about another issue; (2) defendant Faucher told him that protective custody would be denied if Rogers did not drop the other issue; and (3) shortly after he filed the other lawsuit defendant Cotta said he intended to return Rogers to the SRG Unit because he did not listen. These allegations are sufficient to show a plausible connection between Rogers' other lawsuit and the denial of protective custody placement.

9

**ORDERS**

The claims against defendants Aldi and Orgando are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). Rogers may replead his claims against Aldi and Orgando, **within 30 days** of this Order, to include failure to protect claims and supervisory liability claims, if he can plausibly allege sufficient facts to state such claims.

The case will proceed on the failure to protect and supervisory liability claims against defendants Kelly, Faucher, Cotta, Carlos, Stanley, Mulligan, Roach, and Danek in their individual and official capacities. The case also will proceed on retaliation claims against defendants Kelly, Faucher, and Cotta.

The court enters the following orders:

(1)   **The Clerk shall** verify the current work addresses for defendants Kelly, Faucher, Cotta, Carlos, Stanley, Mulligan, Roach, and Danek with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the address provided **within 21 days** of this Order, and report to the court on the status of the waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)   **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendants Kelly, Faucher, Cotta, Carlos, Stanley, Mulligan,

Roach, and Danek in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, **within 21 days** from the date of this Order and to file a return of service **within 30 days** from the date of this order.

 (3) T**he Clerk shall** send Rogers a copy of this Order.

 (4) **The Clerk shall** send a courtesy copy of the Amended Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

 (5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

 (6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order. Discovery requests need not be filed with the court.

 (7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

 (8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

 (9) If Rogers changes his address at any time during the litigation of this case,

Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Rogers must give notice of a new address even if he is incarcerated. Rogers should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Rogers has more than one pending case, he should indicate all the case numbers in the notification of change of address. Rogers should also notify the defendants or the attorney for the defendants of his new address.

(10)   Rogers shall utilize the Prisoner Efiling Program when filing documents with the court. Rogers is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED.**

Dated this 12th day of March 2019 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge